IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/7/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

| | |
|---|---|
| Lunpeng Ma,<br><br>   Plaintiff,<br><br> v.<br><br>Virginia Military Institute, and the Board of Visitors of Virginia Military Institute<br><br>   Defendants. | Case No: 6:21CV00028<br><br>JURY TRIAL DEMANDED |

## I. PARTIES

1. Plaintiff Lunpeng Ma (hereinafter "Professor Ma") is an adult male residing in Lexington, Virginia.

2. Defendant Virginia Military Institute ("VMI") is a public institution of higher education formed under the laws of the Commonwealth of Virginia and located in Lexington, Virginia. VMI is part of the statewide system of public higher education operated by the Commonwealth of Virginia and is a recipient of Title IX federal funds, as defined in 20 U.S.C. § 1681(a).

3. Defendant Board of Visitors of Virginia Military Institute ("VMI") is the chief policy-making and oversight authority for VMI and has a principal place of business at 319 Lechter Avenue, Lexington, Virginia 24450.

## II. JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over the claims asserted in this Complaint under 28 U.S.C. § 1331 as this action arises under the laws of the United States, specifically 42 U.S.C. § 1981 and 42 U.S.C. §2000e.

5. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Professor Ma's claims occurred in Lexington, Virginia, in the Western District of Virginia.

## III. ADMINISTRATIVE EXHAUSTION

6. On July 29, 2020, Professor Ma filed a charge of discrimination with the Equal Employment Opportunity Commission.

7. Professor Ma received a right to sue letter from the EEOC on February 10, 2021.

## IV. FACTS COMMON TO ALL COUNTS

### A. Professor Ma's distinguished career at VMI

8. Professor Ma was born in China.

9. Professor Ma's academic background includes study of Modern and Contemporary Chinese Cinema, Literature, and Culture; Critical Theory; Cultural Studies; East Asian Cinema; Media Studies; Sinophobe; and Chinese Linguistics.

10. In 2003, Professor Ma received a Bachelor of Arts in Cultural Practice and Art Administration from Shanghai Jiao Tong University, Shanghai China.

11. In 2006, Professor Ma received a Master of Arts in Chinese Language and Literature from Shanghai Jiao Tong University, Shanghai, China.

12. In 2013, Professor Ma received a Ph.D. in Comparative Literature and Cultural Studies from Stony Brook University in New York.

13. Between 2013 and 2014, Professor Ma worked as Visiting Assistant Professor at the College of William and Mary, where he taught a variety of literature, film, and popular culture courses on China.

14. On February 28, 2014 VMI hired Professor Ma as an Assistant Professor in the Department of Modern Languages and Cultures (hereinafter, "Department").

15. From 2014 until 2020, VMI and Professor Ma executed employment contracts for each of the six academic years that fell within that period.

16. Professor Ma held a tenure-track appointment, meaning that he was eligible to apply for a tenured position after a six-year probationary period.

17. VMI's Faculty Handbook states that the criteria to be applied by the Tenure and Promotion Committee (hereinafter, "T&P Committee") is based on teaching, scholarly engagement, professional citizenship, and cadet development.

18. During the course of Professor Ma's six-year probationary period, his Department annually evaluated his performance.

19. The Department consistently rated Professor Ma as "Exceeds Expectations" in all four evaluation criteria. In his evaluation for academic year 2018-2019, the Department stated: "You are approaching your tenure year and you have a strong record to show for your 5 years at VMI,"

20. In 2014, Professor Ma founded the Chinese language program at VMI and taught all levels of Chinese from 2014 to 2020.

21. Professor Ma is a prolific scholar. His research focuses on film studies, media research, and popular culture. He published fourteen articles in prestigious journals, including Journal of Modern Life Writing Studies, China Information, Stage and Screen Review, and

Shanghai Art Review. In addition, Routledge has accepted Professor Ma's two articles in two separate anthologies: *Translating Chinese Art and Modern Literature* and *American and Chinese-Language Cinemas: Examining Cultural Flows* for publication.

22. His Department also acknowledged his achievements in research, noting in his annual evaluation as follows: "Your research record is outstanding with four articles published [between 2018 to 2019] and more on the way."

23. Professor Ma regularly speaks at scholarly academic conferences, including the Annual Conference of American Association for Chinese Studies and the Annual Conference of Southeast Conference of the Association for Asian Studies.

24. Additionally, the Shanghai Film Festival selected Professor Ma to serve on the jury for the film festivals as a recognized film scholar. Professor Ma's professional reputation benefitted VMI's Department of Modern Languages and Cultures by attracting visits from acclaimed Asian film directors and showcasing Asian feature films, increasing students' exposure to Asian culture.

25. Professor Ma was an excellent mentor, and maintained a heavy course load, teaching six undergraduate courses per year. He was recognized by his Department and his peers in academia as an effective and productive professor.

26. Professor Ma also served on many departmental and interdisciplinary program committees.

27. Professor Ma played an instrumental role in serving on the Faculty Search Committee for the Department, the International Programs Committee, and the Committee on Academic Advising, where he served as an Academic and Career Advisor to students majoring in modern languages.

### B. VMI discriminates against Professor Ma

28. In Professor Ma's Mid-Tenure Review dated March 10, 2017, the T&P Committee wrote: "[t]he Tenure and Promotions Committee finds that [Professor Ma] is working effectively in all domains and making satisfactory, indeed exemplary, progress toward tenure." The T&P Committee further noted that "Professor Ma is an excellent colleague who 'always does his part' in carrying out the work of the department and the Institute."

29. On a few occasions during department meetings, Donald Sunnen, the Chair of the Department, assigned Professor Ma to work on some mathematical calculation for the meeting, as Professor Ma was always able to generate the result quickly. Sunnen commented to Professor Ma in front of other faculty members, stating that "of course, Asian people are good at math."

30. On November 8, 2019, Sunnen requested Professor Ma to meet in his office to go over his application for tenure. During the meeting, while Sunnen complimented him on his teaching, scholarly engagement, and cadet development, he made an unanticipated comment about Professor Ma's appearance, saying "I don't feel comfortable with your beard." "Are you referring to my mustache?" Professor Ma asked. Sunnen replied, "No, it is your goatee. You need to shave it."

31. Professor Ma did not know how to respond. At the time, he perceived the power differential between himself, a junior pre-tenured faculty member and Sunnen, a senior tenured professor and the department chair who would soon judge his adequacy for tenure status, and therefore acquiesced to his demand.

32. Professor Ma maintained a modest and barely visible goatee in observance of his Daoist religion since he joined VMI. No one at VMI had previously voiced any concern about it.

33. As a strong believer of Daoism, Professor Ma routinely goes to the VMI football field after class, practicing Tai Chi almost every day. His practice was displayed in public and was well known among his students and his colleagues, including Sunnen.

34. In addition to wearing his goatee, Professor Ma is the walking representative of Chinese culture and knowledge at VMI. He has taught a variety of classes, from Beginning Mandarin to Capstone Sun Tzu's The Art of War and to Chinese Culture and Civilization.

35. On November 12, 2019, the tenured faculty members of the Department voted on Professor Ma's tenure application. The faculty members included Sunnen, Kathleen Bulger-Barnett (former Department chair and Professor of Spanish), John Cerkey (Professor of Spanish), and Mary Ann Dellinger (Professor of Spanish). The Department issued a unanimous recommendation letter (hereinafter "letter"). Sunnen signed on behalf of the Department.

36. The letter acknowledged Professor Ma's achievements in all four domains: teaching, scholarly engagement, cadet development, and professional citizenship.

37. The letter included one short paragraph, faulting Professor Ma for his "professional demeanor." The Department also claimed that Professor Ma was "repeated[ly] absent from graduation." Contrary to this claim, Professor Ma was only away from graduation in 2015 and 2017 to direct VMI's summer study abroad program in Shanghai and had to leave early in May to prepare VMI students' logistics and classes that started right after graduation.

38. The letter also claimed that he administered too many independent studies. This was something Professor Ma did at students' requests. Each time, the department approved Professor Ma's request to administer an independent study.

39. Additionally, the letter claimed that Professor Ma did not dress professionally "during the workday or even in the evenings." However, at all times Professor Ma wore business-casual attire as was expected of civilian faculty members.

40. In or around March 2020, the T&P Committee met to review Professor Ma's application for tenure.

41. By letter dated April 22, 2020, the T&P Committee denied tenure solely based on alleged concerns about Professor Ma's professional appearance.

42. However, the T&P Committee's letter was at odds with itself.

43. On the one hand, the T&P Committee mentioned an alleged concern of Sunnen: "[Professor Ma] is a likeable colleague all around, but there are a couple of persistent things I haven't gotten through to him." The T&P Committee did not elaborate further as to the nature of the "persistent things." Given the November 8, 2019 conversation with Professor Sunnen, it is reasonable to infer that the Committee was referring to Professor Ma's goatee.

44. On the other hand, the T&P Committee also commented: "Strangely, while this is a documented issue that Professor Ma has been made aware of, the Tenure and Promotions Committee fails to understand why Professor Ma has been consistently rated as 'exceeds expectations' in this domain on a yearly basis."

45. The T&P Committee correctly found Professor Ma's annual evaluation reports never mentioned any issues with his appearance.

46. Nevertheless, the T&P Committee concluded that the principal reason for denial of tenure is unrelated to Professor Ma's performance, but rather for some vaguely described appearance issues.

47. The alleged professional appearance issues was contrived and reflective of pretext.

48. On April 27, 2020, Professor Ma appealed his denial of tenure to Robert Moreschi, Dean of the VMI Faculty, and the Ad Hoc Review Committee.

49. In his 38-page appeal letter, he offered substantial evidence to rebut the false accusations relating to his professional appearance.

50. On May 11, 2020, he met with the Ad Hoc Committee and reiterated to the members that his wearing of a goatee was in observance of Daoism. Professor Ma also told the Ad Hoc Committee that other faculty members with facial hair had not been disciplined in any way.

51. Neither the Ad Hoc Committee nor VMI's office of human resources investigated Professor Ma's complaint of discrimination.

52. On May 14, 2020, the Ad Hoc Committee issued a decision letter, rubber-stamping the decision made by the T&P Committee. The letter failed to address the discrimination raised by Professor Ma.

53. VMI's inaction in response to a complaint by a faculty member of discrimination is common and reflects a culture of silence permeating the entire organization.

54. VMI discriminated against Professor Ma on the basis of his race (Asian), national origin (China), and religious belief (Daoism).

55. By way of comparison, in 2019, the Department of Modern Languages and Cultures endorsed two U.S. born and Caucasian faculty members, Abbey B. Carrico and Jeff Kendrick, who both received tenure and promotion.

56. Each was granted tenure and received a promotion, despite having performance ratings below that of Professor Ma, particularly in scholarly engagement.

57. As VMI denied Professor Ma's tenure application, it did not renew his employment contract. As a result, Professor Ma will be terminated in August 2021.

58. VMI destroyed Professor Ma's academic reputation.

59. Instead of having the tenured position that he earned over the past six years, Professor Ma will lose his work visa and must relocate to China to obtain employment after his current employment contract with VMI ends.

    **C.    VMI's discrimination against Professor Ma is an example of a pervasive pattern at the institution**

60. On October 19, 2020, the Commonwealth ordered an independent investigation into racism at VMI following a report in *The Washington Post* describing an "atmosphere of hostility and cultural insensitivity".

61. On the same day, Virginia Governor Ralph Northam issued a letter to VMI expressing his "deep concerns about the clear and appalling culture of ongoing structural racism at the Virginia Military Institute."

62. The letter further stated: "This culture is unacceptable for any Virginia institution in the 21st century, especially one funded by taxpayers. Virginians expect all universities—and particularly public universities established by the General Assembly—to be welcoming and inclusive, and to eschew outdated traditions that glamorize a history rooted in rebellion against the United States."

63. General J.H. Binford Peay, III resigned his post as Superintendent of VMI on October 26, 2020, one week after the Commonwealth ordered the investigation of VMI.

64. In November, 2020, the legislature approved budgetary changes proposed by Governor Northam to create a $1 million fund to pay for the independent investigation.

65. On December 8, 2020, Virginia's State Council of Higher Education retained a team from Barnes & Thornburg LLP to conduct the independent special investigation.

66. To the reported frustration of the special investigative team, VMI did not allow the investigators to interview cadets or faculty outside the presence of its lawyers.

67. The special investigation team reported that permitting lawyers to be present for interviews "undermine[s] the independence and effectiveness" of its inquiry by discouraging cadets and faculty members from speaking candidly.

68. Nonetheless, the special investigation revealed that VMI has the highest percentage of Caucasian tenured and tenure-track instructional staff compared to all other Virginia higher learning institutions.

69. The special investigation also found that within VMI, instructors at the rank of assistant professor had the most racial and ethnic diversity, while more senior faculty positions had a higher percentage of Caucasian employees.

70. VMI has a glass ceiling that hinder Asian American professors from being promoted to the tenured positions.

## V. COUNTS

### COUNT I: VIOLATION OF 42 U.S.C. § 1981

71. The preceding paragraphs are incorporated herein as if set forth at length.

72. Under 42 U.S.C. § 1981, VMI was prohibited from taking adverse employment action against Professor Ma because of his race.

73. In violation of its obligation under 42 U.S.C. § 1981, VMI denied Professor Ma promotion and tenure, and fired him on the basis of his race.

74. VMI treated Professor Ma less favorably than similarly situated faculty outside of his protected class.

75. VMI's violation of Section 1981 was willful.

76. As a result of VMI's willful violation of Section 1981, Professor Ma has suffered and will continue to suffer both economic and non-economic damages.

77. Professor Ma suffered damages due to this intentional discrimination.

### COUNT II: DISCRIMINATION ON THE BASIS OF RACE
### Violation of Title VII, 42 U.S.C. § 2000e et seq.

78. The preceding paragraphs are incorporated herein as if set forth at length.

79. Professor Ma is Asian, and as such he is a member of a class protected by Title VII.

80. Professor Ma was qualified for promotion and tenure based on his education, experience, and performance.

81. VMI treated Professor Ma less favorably than similarly-situated faculty outside of his protected class, and denied him promotion and tenure due to his race.

82. Professor Ma suffered adverse employment actions, including but not limited to being denied promotion and tenure and being fired.

83. Professor Ma was denied tenure and promotion because of his race.

84. Defendant's justifications for its denial of Professor Ma's tenure and promotion are false and are a pretext for discrimination.

### COUNT III: DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN
### Violation of Title VII, 42 U.S.C. § 2000e et seq.

85. The preceding paragraphs are incorporated herein as if set forth at length.

86. Professor Ma's national origin is Chinese, and as such he is a member of a class protected by Title VII.

87. Professor Ma was qualified for promotion and tenure based on his education, experience, and performance.

88. VMI treated Professor Ma less favorably than similarly-situated faculty outside of Professor Ma's protected class, and denied him promotion and tenure due to his national origin.

89. Professor Ma suffered adverse employment actions by being denied promotion and tenure and being fired.

90. VMI denied Professor Ma's tenure and promotion because of his national origin.

91. Defendant's justifications for its denial of Professor Ma's tenure and promotion are false and a pretext for discrimination.

## COUNT IV: DISCRIMINATION ON THE BASIS OF RELIGION
### Violation of Title VII, 42 U.S.C. § 2000e et seq.

92. The preceding paragraphs are incorporated herein as if set forth at length.

93. Professor Ma's religious belief is Daoism, and as such he is a member of a class protected by Title VII.

94. Professor Ma, like other Daoists, has a genuinely held religious belief that he should wear a modest goatee. The philosophy of Daoism is reflected in a man's growth and styling of facial hair, which is considered an extension of the energy of the body.

95. Professor Ma informed the Ad Hoc Committee that "his goatee was not a personal style; rather [he] was wearing goatee to observe the moral and religious belief of [his] Chinese background, the same tradition that I impart to my cadets when teaching Daoism and Sun Tzu's *The Art of War* in Capstone."

96. When reviewing the tenure denial decision, the Ad Hoc Committee and the Human Resources Department neither took Professor Ma's religious belief into consideration, nor investigated whether Professor Ma was treated differently than other employees who also exhibited facial hair.

97. The Ad Hoc Committee disregarded Professor Ma's religious beliefs, and instead concluded that his Daoist practice was not in "the long-term best interest of the institute."

98. Professor Ma was qualified for promotion and tenure based on his education, experience, and performance.

99. VMI treated Professor Ma less favorably than similarly-situated faculty outside of his protected class, and denied him promotion and tenure due to his religious beliefs.

100. Professor Ma suffered adverse employment actions, including but not limited to being denied promotion and tenure and being fired.

101. VMI denied Professor Ma's tenure and promotion because of his religious beliefs.

102. Defendant's justifications for its denial of Professor Ma's tenure and promotion are false and are a pretext for discrimination.

## COUNT V: RETALIATION
### Violation of Title VII, 42 U.S.C. § 2000e et seq.

103. The preceding paragraphs are incorporated herein as if set forth at length.

104. Professor Ma complained to the Ad Hoc Committee that the T&P Committee discriminated against him in denying his promotion and tenure based on his race, national origin, and religion.

105. The Ad Hoc Committee disregarded the evidence submitted by Professor Ma, instead summarily affirmed the denial of promotion and tenure. As described above, the Ad Hoc Committee intentionally retaliated against Professor Ma for engaging in protected activity under Title VII of the Civil Rights Act of 1964.

106. As a result of VMI's unlawful and willful acts complained of herein, Professor Ma has and will continue to suffer humiliation, embarrassment, emotional distress, and loss of enjoyment of life.

## VI. PRAYER FOR RELIEF

Wherefore, Professor Ma demands judgment in his favor and against Defendants, and

a. Monetary damages for lost wages and economic opportunity;

b. Past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, embarrassment, reputational harm, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial;

c. Monetary damages for medical expenses caused by emotional distress;

d. Exemplary and punitive damages;

e. Reasonable attorney's fees and costs of suit; and

f. Any and all other relief that the Court deems just and proper.

## VII. JURY TRIAL DEMAND

Professor Ma demands a jury trial on all issues so triable.

Date:  May 7,  2021        Respectfully submitted,

/s/_____
Joshua Erlich (VA Bar No. 81298)
Davia Craumer (VA Bar No. 87426)
The Erlich Law Office, PLLC
2111 Wilson Blvd, Suite 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
           dcraumer@erlichlawoffice.com

Bruce C. Fox, Esquire (*pro hac vice* to be filed)
bruce.fox@obermayer.com
Qiwei Chen, Esquire ((*pro hac vice* to be filed)
qiwei.chen@obermayer.com

Obermayer Rebmann Maxwell & Hippel LLP
525 William Penn Pace, Ste. 1710
Pittsburgh, PA 15219
Tel: (412) 566-1500
Fax: (412) 281-1530